## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF GEORGIA

## SAVANNAH DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT | ) | |
| OPPORTUNITY COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV420-112 |
| | ) | |
| ST. JOSEPH'S/CANDLER | ) | |
| HEALTH SYSTEM, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## <u>ORDER</u>

The Equal Employment Opportunity Commission ("EEOC") filed this action against St. Joseph's/Candler Health System, Inc. ("St. Joseph's"), alleging that it intentionally discriminated against Corey McKever by rescinding a job offer because of his HIV-positive status. *See generally* doc. 1.  The case is scheduled for trial on January 10, 2023.  Doc. 81 at 2; *see also* docket entry Sept. 1, 2022 (pretrial conference scheduled for January 3, 2023).  Currently before the Court are two motions *in limine*, one filed by the EEOC, doc. 88, and one filed by St. Joseph's, doc. 90.  The parties have filed their respective responses, docs. 97 & 98, and replies, docs. 101 & 103.  Additionally, each party has filed an unopposed

motion to seal.  *See* docs. 91 & 93; *see also* S.D. Ga. L. Civ. R. 7.5.  These motions are all ripe for disposition.[1]

## I.   Background[2]

McKever suffers from human immunodeficiency virus, or HIV.  Doc. 65 at 2.  He applied for a Safety Officer position with St. Joseph's, which operates hospitals on two separate campuses in Savannah, Georgia.  *Id.* at 3.  St. Joseph's gave him a conditional offer of employment, and he accepted.  *Id.* at 4.  He then underwent a post-occupational health screening through St. Joseph's Occupational Health Services Department (the "OHS Department").  *Id.*  The manager of the OHS Department ultimately determined that McKever's HIV-positive status created a significant safety risk to others in the workplace, including patients, and decided to rescind his job offer.  *Id.* at 8.  St. Joseph's offered

---

[1] The parties' objections to trial exhibits, docs. 96 & 99, and the EEOC's Motion to Excuse Plaintiff's Attorney Veronica R. Cox from the Pretrial Conference OR to Allow Her to Attend Virtually or Telephonically, doc. 105, remain pending before the District Judge.  *See* doc. 108 at 2-3.

[2] This general factual and procedural background comes predominantly from the District Judge's Order on the Defendant's Motion for Summary Judgment and the Plaintiff's Motion for Partial Summary Judgment, doc. 65, and Order on Plaintiff's Motion for Reconsideration, doc. 71.  Where necessary, the Court will address additional facts from the record in its analysis below.

McKever an alternative position as an OR Support Tech, but he declined the offer.  *Id.* at 9.

McKever filed a Charge of Discrimination with the EEOC, which found reasonable cause to believe that St. Joseph's violated the American with Disabilities Act of 1990 ("ADA").  Doc. 65 at 9.  The EEOC filed this lawsuit, alleging that St. Joseph's "deprive[d] McKever of equal employment opportunities and otherwise adversely affect[ed] his status as an employee because of his disability and/or because [St. Joseph's] perceived him as disabled."  Doc. 1 at 5.  St. Joseph's answered and, after discovery, filed a Motion for Summary Judgment.  Doc. 46.  The EEOC filed its own Partial Motion for Summary Judgment.  Doc. 37.  The District Judge denied St. Joseph's motion, and partially granted the EEOC's motion on two grounds.  Doc. 65 at 30.

Based on the District Judge's disposition, McKever's HIV-positive status constitutes a disability under the ADA, *id.* at 12-13, and he satisfied the prerequisites for the Safety Officer position., *id.* at 15.  All other issues remain for trial.  *See generally* doc. 65; *see also* doc. 71 at 3 ("[I]ssues of material fact exist as to whether McKever suffered an adverse employment action under the ADA and whether the Hospital

rescinded the conditional job offer for the Safety Officer position because of McKever's disability."); *id.* (identifying as a remaining issue "whether McKever would pose a direct threat (including whether the Hospital based its decision to revoke McKever's job offer on an individualized assessment and current, objective medical evidence)"). Although framed slightly differently, the parties generally agree that the remaining issues are (1) whether St. Joseph's discriminated against McKever, (2) whether McKever posed a direct threat, and (3) whether McKever and the EEOC are entitled to damages or other relief. *See* doc. 88-1 at 2; doc. 98 at 3.

## II.   Legal Standard

Motions *in limine* in essence seek a prophylactic against the introduction of damaging evidence that could "'irretrievably affect the fairness of the trial.'" *Benson v. Facemyer*, 2017 WL 1400558, at *1 (N.D. Ga. April 19, 2017) (quoting *Soto v. Geico Indem. Co.*, 2014 WL 3644247 at *1 (M.D. Fla. July 21, 2014)). Courts grant them "'only if the evidence in question is clearly inadmissible.'" *Hamilton v. Lanier*, 464 F. Supp. 3d 1379, 1381 (S.D. Ga. 2020) (quoting *Stewart v. Hooters of Am., Inc.*, 2007 WL 1752873, at *1 (M.D. Fla. Jun. 18, 2007); *see also Benson*, 2017 WL 1400558, at *1 (quoting *Wilson v. Pepsi Bottling Grp., Inc.*, 609 F. Supp.

2d 1350, 1359 (N.D. Ga. 2009)).  Limine rulings are provisional, and the trial judge "may always change his mind during the course of a trial". *Ohler v. United States*, 529 U.S. 753, 758 n. 3 (2000).

## III.  Unopposed Portions of Each Motion *in Limine*

Both the EEOC's and St. Joseph's Motions *in Limine* include requests to exclude evidence or issues which the other party does not oppose.  *See* doc. 88-1 at 1; doc. 90 at 2.  The Court **GRANTS** as unopposed the portions of each motion to which both sides agree.  Doc. 88, in part; doc. 90, in part.

Specifically, the EEOC represents that the parties have agreed to the following:

(a) Defendant agrees that it will not ask Corey McKever or any other witnesses at trial about or otherwise reference Mr. McKever's sexual orientation or his sex life or related matters;

(b) Defendant agrees that it will not present evidence or testimony at trial as to Safety/Security Officer's injuries or incidents that occurred after the decision to rescind the job offer to Corey McKever was made; and

(c) Defendant agrees that it will not present evidence or testimony at trial regarding the fact that the EEOC's proffered expert, William T. Gaunt, Ph.D., was excluded.

Doc. 88-1 at 1.  Similarly, St. Joseph's seeks to exclude three categories of evidence with no opposition from the EEOC:

(a) "The EEOC agrees to refrain from any reference to or suggestion that damages, if any, are to be paid in whole or in part by any person, fund, entity, corporation, or insurance company other than St. Joseph's, including any veiled statement calculated to imply that St. Joseph's would not be responsible for the payment or any damages for which it might be found liable in this case."

(b) "The EEOC will refrain from any statements regarding the Court's prior rulings on the parties' Motions for Summary Judgment, including, but not limited to, statements that the EEOC "won," "already obtained judgment" on certain issues, or any reference that the EEOC has prevailed on issues in this case."

(c) "The EEOC will refrain from making any statement, reference to, or elicit any testimony regarding the EEOC's finding of cause at the administrative level."

Doc. 90 at 2; *see also* doc. 97 at 2.

## IV.   Opposed Portions of EEOC's Motion *in Limine* (Doc. 88)

### A.   McKever's Nondisclosure of his HIV Status to Prior Employers

The EEOC seeks to preclude St. Joseph's from introducing evidence that McKever did not disclose his HIV status to his prior employers.  Doc. 88-1 at 2.  It argues that the evidence is irrelevant and therefore

inadmissible under Federal Rules of Evidence 401 and 402, that any probative value is substantially outweighed by the risks enumerated in Rule 403, and that it is improper character evidence prohibited by Rule 404. St. Joseph's responds that the evidence is relevant and otherwise admissible. Doc. 98 at 2-5.

The EEOC first argues McKever's prior nondisclosure is irrelevant. To be relevant, evidence must have a "tendency" to make a fact which is "of consequence in determining the action" "more or less probable than it would be without the evidence." Fed. R. Evid. 401. "To determine whether a fact is of consequence, [the Court] looks to the elements of the cause of action." *Johnson v. Jennings*, 772 F. App'x 822, 825 (11th Cir. 2019); *see also S. Grande View Dev. Co. Inc. v. City of Alabaster*, 1 F. 4th 1299, 1309 (11th Cir. 2021). If evidence is irrelevant, it is inadmissible. Fed. R. Evid. 402. Even if evidence is relevant, it may be excluded if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

St. Joseph's argues that McKever's nondisclosure of his HIV to former employers "is relevant to the questions of whether he posed a direct threat and whether St. Joseph's conducted an individualized assessment in determining whether McKever would perform the essential functions of the Safety/Security Officer job with a reasonable accommodation." Doc. 98 at 4. St. Joseph's further argues McKever "falsely represented that other employers provided him accommodations" and that St. Joseph's then "relied on this information as part of its efforts to determine if it could accommodate McKever in the same fashion." *Id.* Not only does it contend this demonstrates the evidence's relevance, but also its admissibility under Federal Rule of Evidence 404(b)(2). *Id.*

As the EEOC point out, the "direct threat" analysis inquires "whether St. Joseph's conducted an individualized assessment of the individual's <u>present ability</u> to safely perform the essential functions of the job." Doc. 101 at 3 (emphasis in original) (internal quotes omitted); *see also* doc. 65 at 14 (discussing the direct threat analysis). Whether McKever informed his prior employers about his HIV status—particularly where St. Joseph's does not identify those prior employers, indicate whether they required disclosure of his condition, or articulate

how the "essential functions" of those prior jobs were similar to the Safety/Security Officer job—does not appear relevant to the inquiry. The EEOC contends the only plausible prior employer that could be relevant is "when McKever worked in a jail" which was prior to his HIV diagnosis. Doc. 101 at 3. Even if it is not completely irrelevant, any slight probative value is substantially outweighed by the risk of undue prejudice to McKever if his prior alleged nondisclosure is admitted.

The EEOC also challenges the evidence as inadmissible prior bad acts. "Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b). It may, however, be admissible for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id*. The rule permits the introduction of evidence of a prior act only if (1) it actually relates to an issue in Rule 404(b)(2), not solely to the defendant's character; (2) the defendant sufficiently proves the prior act so a jury can determine the plaintiff committed the act; and (3) the prior act evidence possesses probative value not substantially outweighed by undue prejudice. *United*

*States v. Floyd*, 522 F. App'x 463, 465 (11th Cir. 2013) (citing *United States v. Matthews*, 431 F.3d 1296, 1310–11 (11th Cir.2005)); *see also Mapp v. Mobley*, 2013 WL 5350629, *1 (S.D. Ga. Sept. 23, 2013). The third prong of the Rule 404(b) analysis encapsulates Rule 403's balancing test. *See* Fed. R. Evid. 403.

St. Joseph's appears to concede that the evidence of McKever's nondisclosure of his HIV status to his prior employers qualifies as prior acts evidence, arguing that it is admissible under Rule 404(b)(2). *See* doc. 98 at 3-4. However, it does not fully articulate its theory of admissibility for these prior acts. It alludes to the evidence being admissible "res gestae," arguing it should be able to present evidence that "McKever stated he was provided accommodations from his prior employer." Doc. 98 at 4 (citing *United States v. Nerey*, 877 F.3d 956, 975 (11th Cir. 2017)). "Evidence meets this [res gestae] exception when it is (1) part of the same transaction or series of transactions . . . , (2) necessary to complete the story . . . , or (3) inextricably intertwined with the evidence regarding the [relevant issue]." *Nerey*, 877 F.3d at 974.

None of the exceptions apply here. The first exception does not plausibly apply because McKever's former employment is not part of the

same "transaction" as the revocation of the employment offer at issue.
St. Joesph's does not explain how McKever's prior, unidentified
employment is "necessary to complete the story" of its determination that
he posed a direct threat for the job at issue here.  It certainly does not
explain how that prior employment is "inextricably intertwined" with the
relevant issues here.  In short, the evidence does not constitute "res
gestae" and is inadmissible prior acts evidence.  The EEOC's Motion *in
Limine* to exclude evidence of McKever's non-disclosure of his HIV status
to prior employers is **GRANTED**.  Doc. 88, in part.

## B.    Post-Lawsuit Offers of Employment

The EEOC anticipates that St. Joseph's will attempt to introduce
evidence of a post-lawsuit offer of employment made to McKever and
seeks to preclude it as an offer of compromise under Rule 408.  *See* doc.
88-1 at 4-5.  It also argues that evidence of the post-lawsuit job offer is
irrelevant and subject to exclusion under Rule 403's balancing test.  *Id.*
at 5.  St. Joseph's responds that Rule 408 does not apply because the offer
was, in its estimation, unconditional, and "[a]n unconditional offer of
employment is admissible for certain purposes, including as to mitigation
of damages."  Doc. 98 at 5 (citation omitted).  It also suggests that the

offer of employment is probative to its lack of discriminatory intent based on its "continued desire to employ McKever." *Id.* The EEOC replies that the offer of employment was not unconditional and was instead an inadmissible offer to settle the case. Doc. 101 at 4.

Under Rule 408, evidence of "(1) furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise the claim; and (2) conduct or a statement made during compromise negotiations about the claim . . ." is not admissible to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction. Fed. R. Evid. 408. In the Eleventh Circuit, the test for admissibility under Rule 408 is whether the communication or conduct at issue was intended to " 'be a part of the negotiations toward compromise.' " *Blu–J, Inc. v. Kemper C.P.A. Grp.*, 916 F.2d 637, 642 (11th Cir. 1990) (quoting *Ramada Dev. Co. v. Rauch*, 644 F.2d 1097, 1107 (5th Cir. 1981)). "Rule 408 excludes compromise evidence even when a party seeks to admit its own settlement offer or statements made in settlement negotiations." Fed. R. Evid. 408 advisory committee's note (2006 amend.).

12

The parties dispute whether the offer of employment, made post litigation, was unconditional. *Compare* doc. 98 at 5, *with* doc. 101 at 4. If the offer was conditioned on McKever or the EEOC dropping their claims, it is inadmissible. *See* Fed. R. Evid. 408. Both theories of relevance offered by St. Joseph's indicate it would offer the evidence for purposes violative of Rule 408. First, it suggests the offer is relevant to "mitigation of damages." Doc. 98 at 5. There is an apparent split of authority as to whether evidence used to prove mitigation of damages is a purpose not prohibited by Rule 408, *see Knox v. Cessna Aircraft Co.*, 2007 WL 2874228, at *9-10 (M.D. Ga. Sept. 26, 2007), and the Eleventh Circuit does not appear to have addressed the issue. However, like the Middle District of Alabama, this Court finds the Sixth Circuit's approach to be persuasive. *Sweetwater Invs., LLC v. Sweetwater Apartments Loan LLC*, 2011 WL 13362845, at *2 (M.D. Ala. Sept. 27, 2011) (citing *Stockman v. Oakcrest Center, P.C.*, 480 F.3d 791 (6th Cir. 2007)). " 'The goal of mitigation is the prevention of unnecessary economic loss, and therefore mitigation necessarily goes to the amount of the claim,' and, thus, use of . . . settlement letters to prove mitigation of damages [is] a purpose prohibited by Rule 408." *Id.* (quoting *Stockman*, 480 F.3d at

798); *see also Pierce v. F.R. Tripler & Co.*, 955 F.2d 820, 826 (2nd Cir. 1992) ("Evidence that demonstrates a failure to mitigate damages goes to the 'amount' of the claim and thus, if the offer was made in the course of compromise negotiations, it is barred under the plain language of Rule 408.").

Next, St. Joseph's suggests the employment offer is probative of its "lack of discriminatory intent and continued desire to employ McKever." Doc. 98 at 5.  It is not clear that a post-lawsuit offer of employment is relevant to whether St. Joseph's acted with discriminatory intent at the time it revoked the original job offer to McKever.  More importantly, whether St. Joseph's acted with discriminatory intent is an element of the EEOC's claim, and the defendant may not rely on a compromise offer to disprove the validity of that claim.  If the offer was conditional, this theory of admissibility also fails.

However, if St. Joseph's is correct and it made an unconditional offer of employment, it may be admissible.  *See* doc. 98 at 5 (citing *Ford Motor Co. v. E.E.O.C.*, 458 U.S. 219, 232 (1982)).  In *Knox*, the Middle District of Georgia explained why in a similar context: "An unconditional offer of reinstatement [of employment] is not an offer of settlement under

14

Rule 408 because unconditional offers of reinstatement do not require that employees abandon or modify their suit." 2007 WL 2874228, at *9 (citing *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 909 (2d Cir. 1997) and *Holmes v. Marriott Corp.*, 831 F. Supp. 691, 711 (S.D. Iowa 1993)). Although St. Joseph's makes the argument, it does not identify the actual offer sufficiently for the Court to discern whether it was conditioned on the Plaintiff taking any action to compromise its claim. *See* doc. 98 at 5-6. The Court need not decide, definitively, at this *in limine* stage. Because the evidence *might* be admissible, granting the motion *in limine* would be improper. *See Hamilton*, 464 F. Supp. 3d at 1381 ("[I]f evidence is not clearly inadmissible, evidentiary rulings must be deferred until trial to allow questions of foundation, relevancy, and prejudice to be resolved in context." (internal quotation marks and citation omitted)). The EEOC's motion on this issue is **DENIED**. Doc. 88, in part.

Considering the potential for confusion and given St. Joseph's failure to demonstrate that the offer was unconditional, it must first seek the trial judge's permission before making any argument, eliciting any testimony, or offering any evidence related to any post-lawsuit offer of employment made to McKever. With the trial judge's approval, it should

be prepared to lay the proper foundation to show that the offer was unconditional before it is admissible for any reason.

## C.   St. Joseph's General Good Character

The EEOC asks the Court to exclude evidence of St. Joseph's "good character," including evidence of its "good works, charity, community involvement, and other good deed[s]," pursuant to Federal Rules of Evidence 401, 402, 403, and 404.  It argues the evidence is irrelevant and improper positive character evidence.  Doc. 88-1 at 6.  St. Joseph's responds that the request is too vague to support an *in limine* ruling, and given that vagueness, the request could be overbroad and include possibly admissible evidence.  Doc. 98 at 7.

Generally Federal Rule of Evidence 404(a) bars admission of character evidence to prove action in conformity with that character.  One of St. Joseph's theories of admissibility for evidence of its general good corporate character fall squarely within this exclusionary rule.   It suggests the challenged evidence "speaks to the lack of discriminatory intent by St. Joseph's."  Doc. 98 at 7.  It cannot rely on evidence of its general "good" corporate character, including its "mission statement, and the general manner in which its mission statement guides its hiring and

employment decisions," to show it acted in conformity with that character when assessing McKever for the Safety/Security Officer role. *See* Fed. R. Evid. 404(a).

However, St. Joseph's also argues that evidence of its "presence and role in the Savannah community, its mission statement, and the general manner in which its mission statement guides its hiring and employment decisions" might be admissible on the issue of punitive damages. *See* doc. 98 at 7 (citing, *inter alia.*, *In re Wright Med. Tech, Inc.*, 2015 WL 6690046, at *3 (N.D. Ga. Oct. 30, 2015) (reserving for trial whether evidence of the defendant's corporate mission statement is probative of defendant's intent for purposes of the jury's consideration of a punitive damages award)). The EEOC seeks punitive damages in this case. *See, e.g.*, doc. 108 at 5. While it is not clear that this evidence will be admissible, it is also not clear that it must be excluded. Therefore, the EEOC's motion *in limine* on this issue is **DENIED**. Doc. 88, in part. Because any evidence of St. Joseph's "good corporate character" may be relied upon for an improper purpose, and because any probative value is tied solely to the issue of punitive damages, St. Joseph's must first seek the trial judge's permission before making any argument, eliciting any testimony, or

17

offering any evidence regarding its "presence and role in the Savannah community, its mission statement, [or] the general manner in which its mission statement guides its hiring and employment decisions."

## V.   Opposed Portions of St. Joseph's Motion *in Limine* (Doc. 90)

### A.   Witnesses Not Identified in Discovery

Citing Federal Rules of Civil Procedure 26(a), 26(e), and 37(c), St. Joseph's asks the Court to strike Janice Smith and Paul Hinchey from the EEOC's witness list and preclude the EEOC from calling each as a fact witness, since the EEOC did not disclose them prior to filing its witness list.  Doc. 90 at 3.  The EEOC responds that the failure to identify these witnesses during discovery was substantially justified and harmless.  Doc. 97 at 3.  St. Joseph's disagrees.  *See* doc. 103 at 3-6.

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  " 'The party failing to comply with Rule 26(a) bears the burden of establishing that its non-disclosure was either substantially justified or harmless.'"  *Caviness v. Holland*, 2011 WL

18

13160390, at *2 (S.D. Ga. Mar. 17, 2011) (quoting *Hewitt v. Liberty Mut. Grp., Inc.*, 268 F.R.D. 681, 683 (M.D. Fla. 2010)).

As to the first inquiry, "[s]ubstantial justification is justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply . . . ." *Hewitt*, 268 F.R.D. at 682 (internal quotation marks and citations omitted). As to the second inquiry, when determining whether an insufficient disclosure is harmless, courts, including this one, apply a five-factor test. *See Rangel v. Anderson*, 202 F. Supp. 3d 1361, 1366 (S.D. Ga. 2016) (citing *Kondragunta v. Ace Doran Hauling & Rigging Co.*, 2013 WL 1189493, at *7 (N.D. Ga. Mar. 21, 2013)); *see also Kraese v. Jialiang Qi*, 2021 WL 640826, at *4-*5 (S.D. Ga. Feb. 18, 2021). The five factors are:

> (1) the surprise to the party against whom the evidence would be offered;
>
> (2) the ability of that party to cure the surprise;
>
> (3) the extent to which allowing the evidence would disrupt the trial;
>
> (4) the importance of the evidence; and
>
> (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Rangel*, 202 F. Supp. 3d at 1366 (citing *Cambridge Univ. Press v. Becker*, 2010 WL 6067575, at *3 (N.D. Ga. Sept. 21, 2010)); *Abdulla v. Klosinski*, 898 F. Supp. 2d 1348, 1359 (S.D. Ga. 2012), *aff'd*, 523 F. App'x 580 (11th Cir. 2013).

### a. Janice Smith

The EEOC explains that Janice Smith "is a retired federal investigator who formerly worked for the EEOC in its Savannah Local Office and was the investigator assigned to investigate the Charge of Discrimination filed by Corey McKever." Doc. 97 at 4. It proffers Smith to authenticate her recordings of her investigative interviews of Dr. Ana Maria Concepcion and Laura Floyd, recordings which the EEOC represents it might use for impeachment purposes or to refresh these witnesses' recollection. *Id.* at 5. St. Joseph's has indicated it will object to the recordings' authenticity. *See id.* at 4; *see also* doc. 99 at 3-4, 5.

Although the EEOC appears to concede it did not explicitly and expressly identify Smith during discovery, it points to its document production, arguing her name is "mentioned throughout." Doc. 97 at 4; *see also id.* at 3 ("Smith's name appears over 40 times in the first 145 pages of discovery produced by the EEOC to Defendant."). Even though

her involvement in the administrative proceedings may have been apparent, the EEOC was under an obligation to specifically identify her if it believed her to have discoverable information that it may use to support its claims or defenses. Fed. R. Civ. P. 26(a)(1)(A).[3] Its failure to identify Smith in its initial disclosures or in supplemental disclosures violated Rule 26(a)(1)(A) and (e). Therefore, she may only testify if the violation was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1).

The EEOC first insinuates that its failure to identify Smith was substantially justified by its belief that its direction to St. Joseph's to review the documents produced with the initial disclosures satisfied its disclosure obligation. *See* doc. 97 at 3-4. As discussed above, that

---

[3] The EEOC argues that Smith is "not a fact witness," however it does not explicitly argue that Smith's testimony is solely being used for impeachment purposes, and therefore, excepted from initial disclosure. *See generally* doc. 97; *see also* Fed. R. Civ. P. 26(a)(1)(A). This exception "only covers witnesses whose testimony is offered *solely* to impeach, and does not apply to those who provide any substantive testimony." *Bearint ex rel. Bearint v. Dorell Juvenile Group, Inc.*, 389 F.3d 1339, 1354 (11th Cir. 2004); *see also Newsome v. Penske Truck Leasing Corp.*, 437 F. Supp. 2d 431, 436 (D. Md. 2006) ("A party must . . . disclose without request impeachment evidence which is admissible for substantive purposes under the automatic disclosure provisions of Rule 26(a)."); *Walsh v. LG Chem America*, 2021 WL 4167310, at *8 (D. Ariz. Sept. 14, 2021) ("[O]nly evidence that is *solely* for impeachment purposes is excluded from the disclosure requirement; if evidence has both impeachment and substantive purposes, it must be disclosed."). The EEOC proffers Smith to authenticate recordings that may be useful as impeachment evidence, but also that may contain substantive evidence useful to refresh witnesses' recollections. Without any argument from the EEOC to the contrary, it therefore appears that Smith's disclosure was required.

argument is unconvincing.  However, it also argues that Smith "is simply a foundation witness used to authenticate two recordings," and it did not realize her testimony would be necessary until St. Joseph's objected to the authenticity of those recordings—an objection that caught the EEOC by surprise.  *Id.* at 4-5.  It therefore suggests that it had no reason to disclose her identity during the discovery phase.  This explanation comes closer to the "substantial justification" required.  Even if it did not, the balance of the above-identified factors shows that the late disclosure is ultimately harmless.

St. Joseph's argues that each factor weighs in favor of exclusion; however, a review of the facts shows otherwise.  As the EEOC explains, and as St. Joseph's concedes, the hospital was aware of Smith's involvement at the EEOC's investigation stage and of her involvement in the two recordings, and the recordings were produced in discovery.  *See* doc. 97 at 4-5; doc. 103 at 4-5.  Permitting Smith to testify solely to authenticate the recordings does not constitute surprise sufficient to exclude her testimony.  *See Quesenberry v. Volvo Group N.A., Inc.*, 267 F.R.D. 475, 482 (W.D. Va. 2010) (permitting authentication testimony by undisclosed witnesses "did not disrupt the trial" because the surprise to

the opposing party was limited where the documents themselves were produced during discovery). However, Smith's admissible testimony is limited solely to authenticating the two recordings; any testimony beyond that foundational testimony would be prejudicial and is excluded. *See, e.g.*, *Jackson v. Kansas City Kansas Pub. Schs. Unified Sch. Dist. No. 500*, 378 F. Supp. 3d 1016, 1023 (D. Kan. 2019) (considering foundational testimony in an undisclosed witness's affidavit but declining to consider statements going beyond such testimony). St. Joseph's motion *in limine* to strike Janice Smith as a witness is **DENIED**. Doc. 90, in part.

### b. Paul Hinchey

St. Joseph's challenges the EEOC's identification of Paul Hinchey as a witness on multiple grounds. In addition to raising the EEOC's failure to disclose his identity in discovery, St. Joseph's seeks to exclude him under the apex doctrine. Doc. 90 at 4. He is proffered by the EEOC to authenticate St. Joseph's financial documents it intends to use at trial. Doc. 97 at 5. Because the arguments surrounding his testimony are intertwined with the arguments surrounding the financial documents, which St. Joseph's also seeks to exclude, the Court will address these issues together in Subsection B, below.

### B.    St. Joseph's Financial Statements and Paul Hinchey's Testimony

An issue permeating several of St. Joseph's motions *in limine* is the admissibility of its publicly available financial documents, particularly its July 1, 2020 Audited Financials and its Form 990 for the tax year ending June 30, 2019.  *See* doc. 90 at 4-6, 9; doc. 97 at 5-8, doc. 103 at 5-7, 8-9; *see also* doc. 87 (proposed exhibits P-27 & P-28).  It first argues that the financial document exhibits, P-27 and P-28, should be excluded because they were not identified during discovery.  Doc. 90 at 5-6.  It also argues that the documents "have not been authenticated and are hearsay."  *Id.* at 9.

The use of St. Joseph's own public financial documents cannot come as a surprise, especially where the EEOC asked for these documents during discovery and where punitive damages are at issue in this case. If the EEOC was required to disclose St. Joseph's own financial documents, any failure to do so was therefore harmless.  *See* Fed. R. Civ. P. 37(c)(1).  Additionally, any challenges to authenticity or hearsay are premature—and the EEOC has offered at least plausible arguments against these objections.  *See* doc. 97 at 6-7.  Therefore, the motion *in*

*limine* is **DENIED**.   Doc. 90, in part.   St. Joseph's may renew its objections at trial.

Because the financial records are not clearly inadmissible, the Court next turns to the EEOC's identification of the hospital's CEO Paul Hinchey, who it intends to call to authenticate the two financial exhibits. Doc. 97 at 5.  The EEOC did not disclose Hinchey prior to filing its witness list, and St. Joseph's seeks exclusion on that ground.  *See* doc. 90 at 3. Additionally, St. Joseph's argues Hinchey is protected by the apex doctrine.  *Id.* at 4-5.  The "apex doctrine" generally applies to protect high-ranking corporate officers from depositions, unless the officer has unique, non-repetitive, firsthand knowledge of the facts and issue and other less intrusive means of discovery have been exhausted.  *See, e.g.*, *Apple Inc. v. Corellium, LLC*, 2020 WL 1849404, at *3 (S.D. Fla. April 13, 2020). Although the Court is unaware of any Court in the Eleventh Circuit applying this doctrine to a trial subpoena, St. Joseph's cites one case from the Central District of California where a high-ranking corporate executive obtained a protective order from appearing at trial pursuant to a Rule 45 subpoena.  *See Pinn, Inc. v. Apple Inc.*, 2021 WL 4775969, at *4 (C.D. Cal. Sept. 10, 2021).  However, another California District Court

has expressly refused to apply the "apex doctrine" to trial testimony, observing "to the extent it is a recognized doctrine, the 'apex doctrine' only has been applied to discovery, not trial." *DataQuill Limited v. Kyocera Wireless Corporation*, 2005 WL 8173292, at *2 (S.D. Cal. Oct. 26, 2005).

The EEOC, perhaps assuming the "apex doctrine" does apply to trial testimony, explains that it has a "special need" for Hinchey's testimony. Doc. 97 at 7. It argues Hinchey is identified as the principal officer on both financial documents, and "can authenticate those documents and put them in context relevant to the EEOC's claim for punitive damages." *Id.* While it is not clear that this would prevent application of the "apex doctrine," even if that doctrine did apply to trial testimony, it does not excuse the EEOC's failure to identify Hinchey as a witness prior to its submission of its witness list.

The EEOC does not really address, at all, why it failed to identify Hinchey as a relevant witness during discovery. *See* doc. 97 at 5-6. Unlike Janie Smith, discussed above, Hinchey does not appear to have had any involvement with any of the facts underlying the EEOC's cause of action. The EEOC identified him as a trial witness to authenticate

financial documents, but St. Joseph's argues that "there is no evidence Hinchey signed the documents, prepared the documents, or is the relevant witness to authenticate the documents." Doc. 103 at 6. The EEOC suggests that its failure to disclose Hinchey was "harmless," *see* doc. 97 at 8, but focuses its argument on why admission of the financial records themselves should not come as a surprise, *see id.* The EEOC has not demonstrated why identifying the CEO of the hospital, who was not identified at all during discovery, as a witness for trial is either substantially justified or harmless. He should, therefore, be **EXCLUDED**. St. Joseph's motion *in limine* is **GRANTED** on this issue. Doc. 90, in part.

## C. The Centers for Disease Control and Prevention ("CDC") Website

The EEOC has identified as proposed exhibits three webpages from the CDC's website. Doc. 87 (Exhibits P-29, P-30, & P-31). St. Joseph's seeks exclusion of these webpages based on the EEOC's failure to disclose them during discovery. Doc. 90 at 5-6. It additionally argues the webpages are irrelevant, prejudicial, and contain inadmissible hearsay. *Id.* at 7-8. The EEOC argues the webpages are "relevant to show (1) the decision-maker's knowledge at the relevant time and (2) that McKever

does not pose a direct threat," and that the webpages fall under the public records exception to the hearsay rule.  *Id.* (citing Fed. R. Evid. 803).  It also contests St. Joseph's position that it did not disclose the CDC website during discovery by explaining that "Defendant disclosed to the EEOC that Floyd relied on the CDC websites to make the decision not to hire McKever."  *Id.* at 9.

The EEOC's own briefing suggests that at least one of the webpages, identified as P-31, "does not appear to have existed at the time Floyd made her decision."  Doc. 97 at 11.  Therefore, it is not relevant to "whether St. Joseph's conducted an individualized assessment of the individual's present ability to safely perform the essential functions of the job" at the time the relevant decision was made.  Doc. 101 at 3.  St. Joseph's motion *in limine* as to the CDC webpage identified as P-31 is, therefore, **GRANTED**.  Doc. 90, in part.

The EEOC represents that the other two CDC webpages, P-29 and P-30, are versions last updated on "the closest date available prior to [St. Joseph's] decision."  Doc. 97 at 10.  It further represents that one of St. Joseph's employees, Laura Floyd, relied on the CDC websites when making the decision not to hire McKever.  *Id.* at 9.  Therefore, these

webpages are not clearly irrelevant. *See* Fed. R. Evid. 401, 402. Additionally, although apparently not disclosed by the EEOC during discovery, any use of these webpages cannot be considered a surprise to St. Joseph's when its own employee relied on them in making the very decision at issue here, and where the EEOC and the Court relied on them during the summary judgment phase. *See, e.g.*, doc. 65 at 2, n. 1. Any failure to disclose was, therefore, harmless. *See* Fed. R. Civ. P. 37(c)(1). The EEOC also offers a plausible argument that the webpages are admissible under a hearsay exception, and that the Court can take judicial notice of the information contained therein. *See* doc. 97 at 9-10. Because P-29 and P-30 are not clearly inadmissible, the motion *in limine* to exclude them is **DENIED**. Doc. 90, in part. St. Joseph's may renew its objection at trial.

### D. Lay Testimony about McKever's Medical Condition

St. Joseph's asks the Court to exclude "any testimony from McKever or any other lay witness related to HIV or any other medical condition outside of the witness's own perception." Doc. 90 at 10. It also seeks to exclude testimony from McKever "regarding statements said to McKever from his healthcare providers regarding his HIV condition . . . ."

*Id.*  In response, the EEOC "agrees not to provide any testimony that falls within Federal Rule of Evidence 702 and agrees McKever's testimony will be based on his personal knowledge."  Doc. 97 at 11.  It does not respond to St. Joseph's request to exclude McKever from testifying about statements made to him by his physicians.  *Id.*  Therefore, St. Joseph's request to limit McKever to testimony based on his own personal knowledge and experience and its request to prevent McKever from testifying about "statements said to McKever from his healthcare providers regarding his HIV condition outside of statements made describing medical history, past or present symptoms or sensations, their inception, or their general cause" are **GRANTED**, as unopposed.  Doc. 90, in part.

The EEOC argues that "other witnesses" should be able to testify to "facts within their personal knowledge about a medical condition or medical terms based on their own experience" under Federal Rule of Evidence 701.  Doc. 97 at 11-12.  In reply, St. Joseph's reiterates that "testimony of any lay witness related to HIV or any other medical condition outside of the witness's own perception" should be precluded under Rule 701.  Doc. 103 at 10-11.  Rule 701 permits a lay witness to

testify in the form of an opinion if the opinion is "(a) rationally based on the witness' perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.  To the extent St. Joseph's asks the trial court to apply Rule 701 to any lay witness's testimony at trial, it is **DENIED**, as moot. Doc. 90, in part.  The Court will, of course, apply the Federal Rules of Evidence at trial.  If any lay witness attempts to offer expert opinion at trial in violation of Rules 701 or 702, St. Joseph's can raise an objection at that time.

### E.   Evidence of Pecuniary Damages Not Produced in Discovery

St. Joseph's moves for exclusion of "evidence of pecuniary damages to McKever that was not produced in discovery."  Doc. 90 at 10.  The EEOC responds that the request is vague and overbroad, "as it is unclear what specific evidence Defendant is seeking to exclude. . . ."  Doc. 97 at 12.  It contends it provided its damages calculations and the documents related to those damages during discovery.  *Id.*  In reply, St. Joseph's acknowledges receipt of those documents, but again argues that "to the extent the EEOC seeks damages outside its calculations produced in

discovery, the EEOC should be precluded from presenting such evidence or referencing any alleged additional damages." Doc. 103 at 11.

As discussed above, Rule 37(c) contemplates that *some* evidence or testimony may be admitted into evidence, even if it was not disclosed under Rule 26(a). *See Kraese v. Jialiang Qi*, 2021 WL 640826, at *4-*5 (S.D. Ga. Feb. 18, 2021) ("[A] court does not have to impose [Rule 37(c)] sanctions if it believes the failure [to provide information or identify a witness as required by Rule 26(a)] was substantially justified or is harmless." (internal quotes and citations omitted)). St. Joseph's does not point to any specific damages evidence it seeks to exclude. It is conceivable that questioning at trial *could* elicit testimony from a witness related to damage amounts that were not disclosed. At that time, St. Joseph's can object, and the EEOC will remain free to argue why the evidence or testimony should not be excluded. At this pre-trial stage, St. Joseph's has not identified any damages-related evidence that is "clearly inadmissible." *Hamilton*, 464 F. Supp. 3d at 1381. Its motion on this issue is, therefore, **DENIED**. Doc. 90, in part.

### F.    Elements Not Before the Court

St. Joseph's seeks to preclude the EEOC from "presenting evidence on the claims in which it obtained summary judgment," arguing "[s]uch evidence is not relevant, unnecessarily cumulative, will cause delay, and will confuse the jury on the issues to be tried." Doc. 90 at 11. However, as the EEOC highlights in response, this overbroad request might include evidence that, while related to an issue already ruled upon, is also relevant to an issue in dispute. *See* doc. 97 at 13. St. Joseph's does not identify any particular or specific evidence or even category of evidence it seeks to exclude under this broad theory. It's motion *in limine* is, therefore, **DENIED** on this point. Doc. 90, in part; *see Hamilton*, 464 F. Supp. 3d at 1381.

### G.    EEOC Administrative Proceeding

The EEOC has identified as trial exhibits McKever's EEOC Charge, St. Joseph's Position Statement in response, St. Joseph's response to the EEOC's request for information, and two audio recordings from the EEOC investigation. Doc. 90 at 12 (citing doc. 87). St. Joseph's argues this evidence is irrelevant, and presentation of this evidence will cause undue delay, waste the Court and the jury's time, and needlessly present cumulative evidence in violation of Federal Rule of Evidence 403. Doc.

90 at 12.   The EEOC offers theories of relevancy for each, and the potential probative value is not substantially outweighed by the risks identified by St. Joseph's.  *See* doc. 97 at 14.  The request to exclude these exhibits as violative of Rule 403 is, therefore, **DENIED**.  Doc. 90, in part.

St. Joseph's raises an additional basis for exclusion of "the version of St. Joseph's Position Statement produced by the EEOC in discovery [that] includes markings and highlights that are not original to the document and constitute inadmissible hearsay."   Doc. 90 at 12.  "Hearsay" is a "statement" that is offered to "prove the truth of the matter asserted in the statement."  Fed. R. Evid. 801.  It is not clear from either party's submission whether these "markings and highlights" qualify as hearsay.  Therefore, the evidence is not "clearly inadmissible" and the motion *in limine* must be denied.  Doc. 90, in part.  St. Joseph's may raise any objection to the evidence at trial.

## VI.   Motions to Seal

Both the EEOC and St. Joseph's move to seal documents related to their exhibit lists.  *See generally* docs. 91 & 93.   Neither motion is opposed.  *See* S.D. Ga. L. Civ. R. 7.5.  St. Joseph's moves to seal "third-party documents provided to St. Joseph's from Walmart Inc." marked as

confidential.  Doc. 91 at 1.  It represents that the third-party documents, proposed exhibits D-47, D-48, and D-49, "include employment information regarding Corey McKever . . . related to his employment with Walmart" and contain "confidential personnel material related to McKever and potentially proprietary information of Walmart."  *Id.* at 1-2.  It does not seek to permanently seal these documents; instead, it asks that these exhibits be filed under seal "to respect the confidentiality and potential proprietary nature of Walmart's information" while it continues to "work with Walmart to obtain a resolution as to the confidentiality of the Sealed Exhibits" so they may be unsealed.  *Id.* at 2.

Meanwhile, the EEOC seeks to seal "Joint Exhibit 19, Plaintiff Exhibit 15, and Plaintiff Exhibit 24," arguing they contain confidential medical information and confidential information of third parties.  Doc. 93 at 1.  It explains that Joint Exhibit 19 and Plaintiff Exhibit 15 "include McKever's confidential medical records, which include information of not only the private medical diagnoses and treatment of medical conditions relevant to this case, but also include other private medical information that is not relevant to this case."  Doc. 93-1 at 1.  Plaintiff Exhibit 24 contains "personal information of [third-party] job applicants, including

Social Security numbers and other personal information, that is difficult to redact. *Id.* at 2.

The Eleventh Circuit has explained that "[t]he operations of the courts and the judicial conduct of judges are matters of utmost public concern and the common-law right of access to judicial proceedings, an essential component of our system of justice, is instrumental in securing the integrity of the process." *Romero v. Drummond Co.*, 480 F.3d 1234, 1245 (11th Cir. 2007) (internal quotation marks omitted) (quoting *Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 839 (1978), and *Chi. Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001)). "[T]he common-law right of access includes the right to inspect and copy public records and documents." *Chi. Tribune Co.*, 263 F.3d at 1311 (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) (referencing specifically the right to inspect and copy "judicial records and documents.")). "Material filed in connection with any substantive pretrial motion, unrelated to discovery, is subject to the common law right of access." *Romero*, 480 F.3d at 1245. The Eleventh Circuit recently reaffirmed this standard, finding that the public right of access is presumed for "judicial records," which include "documents filed with

pretrial motions that require judicial resolution of the merits of an action." *Callahan v. United Network for Organ Sharing*, 17 F.4th 1356, 1363 (11th Cir. 2021) (internal citation and quotations omitted).

A party can overcome the common-law right of access by a showing of good cause. *Callahan*, 17 F.4th at 1363. A good cause determination "requires balancing the asserted right of access against the other party's interest in keeping the information confidential." *Romero*, 480 F.3d at 1246 (internal quotation marks and alterations omitted) (quoting *Chi. Tribune Co.*, 263 F.3d at 1309). In weighing these competing interests, the Court considers "a number of important questions," which the Eleventh Circuit discussed in *Callahan*:

> [W]hether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the information, whether the information concerns public officials or public concerns, and the availability of a less onerous alternative to sealing the documents. Concerns about trade secrets or other proprietary information, for example, can overcome the public interest in access to judicial documents. Indeed, a court should consider whether the records are sought for such illegitimate purposes as to promote public scandal or gain unfair commercial advantage.

*Callahan*, 17 F.4th at 1363 (internal quotation marks and citations omitted). The decision of whether good cause exists rests with the sound

discretion of the district court judge, is based on the "nature and character of the information in question," and "should be informed by a sensitive appreciation of the circumstances that led to the production of the particular document in question." *Chi. Tribune Co.*, 263 F.3d at 1311 (quoting *Nixon*, 435 U.S. at 603) (internal quotation marks and alterations omitted), 1315.

Both parties have demonstrated the requisite good cause to seal proposed exhibits that contain third-party proprietary information, third-party social security numbers, and private medical records irrelevant to the issues in this case. St. Joseph's Motion to Seal is **GRANTED**. Doc. 91. St. Joseph's is **DIRECTED** to submit to the Clerk Defendant's Exhibits 47, 48, and 49, within seven days from the date of this Order. The Clerk is **DIRECTED** to maintain those documents **UNDER SEAL** until further Order of the Court or until first use at trial.[4] St. Joseph's is further **DIRECTED** to continue to seek a response from Walmart as to the necessity of sealing these documents. St. Joseph's must inform the Court of its efforts and of Walmart's response, if any,

---

[4] This Order does not seal or permit redaction of documents admitted into evidence at trial, as those issues are more appropriately reserved for the trial judge.

within fourteen days from the date of this Order.  The EEOC's Motion to Seal is also **GRANTED**.  Doc. 93.  The EEOC is **DIRECTED** to submit to the Clerk Joint Exhibit 19, Plaintiff Exhibit 15, and Plaintiff Exhibit 24 within seven days from the date of this Order.  The Clerk is **DIRECTED** to maintain those proposed exhibits **UNDER SEAL** until further Order of the Court or until first use at trial.

## VII.  Conclusion

The Equal Employment Opportunity Commission's Motion *in Limine* is **GRANTED, in part**, and **DENIED, in part**.  Doc. 88. Defendant St. Joseph's/Candler Health System, Inc.'s Motion *in Limine* is **GRANTED, in part**, and **DENIED, in part**.  Doc. 90.  The Motions to Seal are **GRANTED**.  Docs. 91 & 93.

**SO ORDERED**, this 28th day of December, 2022.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA